**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAVID WIEDBUSCH,

    Plaintiff,

v.

OAKLAND COUNTY, OAKLAND COUNTY
SHERIFF MICHAEL BOUCHARD, OAKLAND
COUNTY DEPUTY BROWN, OAKLAND
COUNTY DEPUTY CUMMINGS, OAKLAND
COUNTY SERGEANT BRUDVIG, OFFICER
SIMPKINSON, OFFICER COOLEY, OFFICER
RAYMOND KUJAWA, and OFFICER ROBERT
MYSZENSKI,

    Defendants.

Case No. 03-CV-74033-DT

HONORABLE DENISE PAGE HOOD

_____/

**<u>MEMORANDUM OPINION AND ORDER
AND
NOTICE OF FINAL PRETRIAL CONFERENCE</u>**

**I.   BACKGROUND/FACTS**

This matter is before the Court on a second Motion for Summary Judgment filed by the remaining Defendants Oakland County Deputies Brown and Cummings. The parties agreed to the dismissal of Oakland County Sheriff Michael Bouchard. In an Order dated March 3, 2005, the Court dismissed Defendants Oakland County, Brudvig, Cooley, Simpkinson, Myszenski and Kujawa.

Plaintiff's First Amended Complaint alleges: Violation of the Fourth Amendment, 42 U.S.C. § 1983, Unreasonable Search and Seizure (Count I); Violation of the Fourteenth Amendment, 42 U.S.C. § 1983, Illegal Detention and Violation of Due Process (Count II); Violation of the Fourth and Fourteenth Amendment, 42 U.S.C. § 1983, Illegal Detention and Unreasonable Search and Seizure (Count III); False Arrest and Imprisonment (Count IV); and, Intentional Infliction of

Emotional Distress (Count V).

In 2001, Plaintiff and his wife were in the process of a divorce but still lived together in the same home. (Pl. Dep., pp. 23-24) In the early morning of July 15, 2001, Plaintiff was at home with his two young children, ages two and seven. (First Amended Comp., ¶ 11; Pl. Dep., pp. 1, 10) Plaintiff's wife, Lillian, came home from a concert around 1:30 a.m. (Pl. Dep., p. 24) At that point, the children were asleep. (Pl. Dep., p. 24) Plaintiff claims his wife was drunk. (Pl. Dep., p. 25) Plaintiff claims his wife started punching him in his torso and so he called the police before the matter escalated. (Pl. Dep., p. 26) Deputies Brown and Cummings arrived at the home. (Pl. Dep., p. 31) At the time they arrived, Plaintiff was holding the youngest child because she had awakened. (Pl. Dep., p. 31) Deputy Brown directed Plaintiff to sit on a chair and Deputy Brown went to speak with Plaintiff's wife who was in another room. (Pl. Dep., p. 31) Deputy Brown indicated to both Plaintiff and his wife that he was looking for a solution. (Pl. Dep., p. 33) Plaintiff suggested that his wife's family or friend should pick her up and have her spend the night somewhere else or that Plaintiff should take the children and go to his parents' house for the evening. (Pl. Dep., p. 33) Deputy Brown responded that he thought it would be best if Plaintiff just left, which was unacceptable to Plaintiff. (Pl. Dep., p. 33) Plaintiff claims he did not want to leave the children with his wife because she was intoxicated and he did not understand why he had to leave his home. (Pl. Dep., p. 33). Plaintiff and his wife were given Breathalyzer tests. The results were negative for Plaintiff and legally intoxicated for his wife. (Pl. Dep., pp. 33-34)

Plaintiff claims that the deputies felt that they were remaining at the scene too long and Deputy Brown was becoming a little upset because it was not going the way Deputy Brown wanted it to go. (Pl. Dep., p. 34) Deputy Brown told Plaintiff to get his things and leave the home. (Pl.

Dep., p. 34) Plaintiff requested an opportunity to discuss the issue with a higher authority than Deputy Brown.  (Pl. Dep., p. 34)  Deputy Brown called for a sergeant to come to the scene.  (Pl. Dep., p. 36) Plaintiff was then arrested for domestic violence.  (Pl. Dep., p. 41)  Deputies Brown, Cummings and Sergeant Brudvig arrested Plaintiff.  (Pl. Dep., p. 47)  Plaintiff was in jail until the next day.  (Pl. Dep., p. 58)  Plaintiff claims the officers refused to let him file a citizen's complaint. (Pl. Dep., pp. 58-59)

Plaintiff claims that the incident was audio taped and that some of his audiotapes were stolen from his vehicle.  (Pl. Dep., pp. 60-61, 67)  Plaintiff had planned to tape record his wife when she got home because of prior incidents with his wife.  (Pl. Dep., pp. 35-36)  As a result of the arrest, Plaintiff lost physical custody of his children and sees them 30 days less per year than he would have prior to the incident.  (Pl. Dep., pp. 70-73).

## II.     ANALYSIS

### A.     Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248.

### B.  Qualified Immunity as to Defendants Brown and Cummings

#### 1.  Standard

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officers would have concluded that [the action at issue was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere

4

defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a Plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

Plaintiff claims he was arrested without probable cause and that property was taken without a search warrant, in violation of the Fourth and Fourteenth Amendment. In a Section 1983 claim, proof of the actual existence of probable cause is an absolute bar to a 1983 action for unlawful arrest. *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988). Where probable cause to arrest exists, no constitutional violation occurs and the Court does not even reach the issue of qualified immunity. *Id.* Probable cause to arrest has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person or one of reasonable caution, in believing in the circumstances shown that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires merely the probability of criminal activity, and need not show a "prima facie" case of the crime. *Illinois v. Gates*, 462 U.S. 213 (1983). Whether probable cause exists is determined by the totality of the circumstances. *Id.* at 238. A valid arrest based upon a then-existing probable cause is not vitiated if the suspect is later acquitted or the charges are dismissed. *Criss*, 867 F.2d at 262; *Arnott v. Mataya*, 995 F.2d 121 (8th Cir. 1993). An officer "is under no obligation to give any credence to a suspect's story, nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss*, 867 F.2d at 263. "The Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released." *Id.*

6

"The right to be free from excessive force is a clearly established right. Excessive force claims are to be analyzed under the Fourth Amendment's 'objectively reasonable' test, not under a substantive due process standard." *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). "While the Fourteenth Amendment does not guarantee life, it guarantees that the state cannot deprive an individual of life without due process." *Nishiyama,* 814 F.2d at 280. The preservation of one's own life is an interest of constitutional dimension. *Id.* In analyzing the facts in *Nishiyama,* the Sixth Circuit confirmed the validity of a due process claim against a state and state actors as applied through the Fourteenth Amendment under § 1983.

### 2.     Deputies Brown and Cummings

As this Court noted in its previous opinion, the depositions of Deputy Brown and Plaintiff's wife had not been taken at the time of the first Motion for Summary Judgment. The depositions of these two have now been taken. Plaintiff claims the Court has already ruled on the qualified immunity issue and that Defendants failed to file a timely motion for reconsideration of the Court's ruling.

Motions for Reconsideration are governed by a local rule which provides that a Motion for Reconsideration must be filed within ten days after the entry of an order. E.D. Mich. LR 7.1(g)(1). The rule further states:

> (3) **Grounds**. Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

E.D. Mich. LR 7.1(g)(3).

The Court's Memorandum Opinion and Order was filed on March 4, 2005. The second motion for summary judgment was filed on June 1, 2005, well beyond the ten-day limit under E.D. Mich. LR 7.1(g)(1). A reading of the second motion for summary judgment shows that Defendants Brown and Cummings are arguing the same issues as previously ruled on by the Court–that of qualified immunity. Defendants Brown and Cummings' Motion for Summary Judgment is an untimely Motion for Reconsideration.

Even if the Court were to reconsider this second motion, Defendants have not demonstrated any palpable defect by which the Court and the parties have been misled nor have they shown that a different disposition of the case must result from a correction thereof. A review of Defendant Brown's deposition does not change this Court's finding that there are genuine issues of material fact, based on Plaintiff's deposition. Defendant Brown testified that in order to determine who goes to jail on a domestic assault allegation, his decision is based on who was the aggressor. (Brown Dep., p. 17) Defendant Brown testified that when he initially entered the home, Plaintiff was relatively calm and he became agitated the longer the deputies were in the home. (Brown Dep., p. 17) Defendant Brown stated that Plaintiff became confrontational when he was given the option of either staying in his parents' home for the night or going to jail. (Brown Dep., p. 18) Defendant Brown further stated that before Plaintiff was taken to jail, Defendant Brown was not going to take anybody to jail. (Brown Dep., p. 17) Defendant Brown testified that he gave Plaintiff every opportunity, "and then some," to leave the residence without going to jail. (Brown Dep., p. 22) It was only after Plaintiff refused to go to his parents' house that Plaintiff was arrested for domestic violence. (Brown Dep., p. 51) It is noted that Defendant Cummings' deposition was previously

8

before the Court.

Defendant Brown's deposition testimony does not support the argument that Michigan is a "shall-arrest" state where there is evidence of physical abuse or assault. (Defendants' Br., p. 9) Defendant Brown's deposition testimony and the deposition of Plaintiff create a question of fact as to whether there was sufficient evidence of physical abuse or assault to arrest Plaintiff. If there was sufficient evidence that Plaintiff assaulted his wife, then Plaintiff would have been immediately arrested given Defendants' argument that Michigan is a "shall-arrest" state where there is evidence of physical abuse or assault. It was only after Plaintiff refused to leave the home for the night that Defendant Brown arrested Plaintiff. There remain genuine issues of material fact based on the Plaintiff's deposition as noted by the Court in its previous Opinion.

As to Defendants' argument that Defendant Cummings should be dismissed because he was not the decision-maker nor did he take any role in making the arrest of Plaintiff (see Defendants' Br., p. 10), Defendant Brown's deposition testimony does not support this argument. Although Defendant Brown indicated he arrested Plaintiff, Defendant Brown's testimony shows that the decision was based on discussions between him and Defendant Cummings. (See Brown Dep., pp. 11, 14, 15 and 22)("Deputy Cummings and I got together," "Just based on the conversation Deputy Cummings and I had at the time, the decision was made that the assault had taken place ...," "It's the totality of the circumstances of the incident that led us to believe what course of action was best to take. ...," and "After my conversation with Deputy Cummings and I made a course of action — or made a decision on a course of action we were going to take.")

Based on the above, the Court finds there remain genuine issues of a material fact regarding the federal § 1983 claims against Defendants Brown and Cummings.

9

The Court notes that Defendants' second Motion for Summary Judgment does not address the governmental immunity defense as to the state law claims against Defendants. The Court's ruling on the state law claims against Defendants Brown and Cummings stands.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(Docket No. 28, filed June 1, 2005)** DENIED. The federal and state claims alleged in the Amended Complaint found in Count I (Violation of the Fourth Amendment, 42 U.S.C. § 1983, Unreasonable Search and Seizure); Count II (Violation of the Fourteenth Amendment, 42 U.S.C. § 1983, Illegal Detention and Violation of Due Process); Count IV (False Arrest and Imprisonment); and Count V (Intentional Infliction of Emotional Distress) remain against Defendants Brown and Cummings.

IT IS FURTHER ORDERED that Defendant Sheriff Bouchard only is DISMISSED pursuant to the parties' agreement. Count III (Violation of the Fourth and Fourteenth Amendment, 42 U.S.C. § 1983, Illegal Detention and Unreasonable Search and Seizure) is also DISMISSED since the failure to supervise and train and the custom and policy claims are alleged against the dismissed Defendants Bouchard and Oakland County.

IT IS FURTHER ORDERED that a Final Pretrial Conference in this case will be held on **Tuesday, April 4, 2006, 3:00 p.m.** A trial date will be scheduled during the conference. The parties must submit to Chambers their proposed Joint Final Pretrial Order pursuant to E.D. Mich. LR 16.2 by March 28, 2006. All parties with authority to settle must appear at the conference.

      /s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: February 6, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 6, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager